UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS             26-cv-197 (JGK)
PENSION FUND, WELFARE FUND, ANNUITY
FUND, AND APPRENTICESHIP,                  MEMORANDUM OPINION
JOURNEYMAN RETRAINING, EDUCATIONAL         AND ORDER
AND INDUSTRY FUND, ET AL.,

                          Petitioners,

        - against -

EFRAIN JIMENEZ, JR. GENERAL
CONTRACTOR INC.,

                          Respondent.

------------------------------------------------

JOHN G. KOELTL, District Judge:

        The petitioners, Trustees of the New York City District

Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund,

and Apprenticeship, Journeyman Retraining, Educational and

Industry Fund (the "ERISA Funds"), Trustees of the New York City

Carpenters Relief and Charity Fund (the "Charity Fund"), and the

Carpenter Contractor Alliance of Metropolitan New York ("CCA,"

and together with the ERISA Funds and the Charity Fund, the

"petitioners" or the "Funds"), have filed a petition to confirm

an arbitration award (the "Petition") pursuant to section 301 of

the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C.

§ 185. See Petition to Confirm Arbitration Award ("Pet."), ECF

No. 1. The respondent, Efrain Jiminez, Jr. General Contractor

Inc., has not opposed the Petition. For the reasons explained below, the Petition is **granted**.

### I.

The following uncontested facts are taken from the Petition and supporting papers.[1]

The ERISA Funds are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Pet. ¶ 4. The Charity Fund is a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). Id. ¶ 5. CCA is a New York not-for-profit corporation. Id. ¶ 6. The respondent, Efrain Jiminez, Jr. General Contractor Inc., is a domestic business corporation organized under the laws of New York. Id. ¶ 7. At all relevant times, the respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Pet. ¶ 7.

The respondent is also a member of the Building Contractors Association, Inc. (the "Association"). Id. ¶ 10; see also Pet.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

Ex. A, ECF No. 1-1. As a member of the Association, the respondent agreed to be bound by all contracts entered into between the Association and the New York City District Council of Carpenters (the "Union"). Pet. ¶ 11.

In July 2021, the respondent and the Union executed a collective bargaining agreement (the "CBA") covering the period between July 1, 2017 and June 30, 2024. Id.; Pet. Ex. B, ECF No. 1-2. On June 27, 2024, the respondent and the Union extended the CBA through May 31, 2029. Pet. ¶ 11. The CBA requires, among other things, that the respondent contribute to the Funds for all work within the Union's trade and geographic jurisdiction. Pet. Ex. B, art. XVII § 1. The CBA also requires the respondent to make its books and payroll records available for inspection by the Funds so that the Funds may ensure that the respondent complies with the CBA's contribution requirement. See id. (providing that "[i]t shall be a violation of th[e] [CBA] for any Employer ... bound by this [CBA] to fail to furnish proper records when requested, for the purpose of completing an audit").

The CBA further binds employers to the policies and regulations adopted by the Funds' trustees. Id., art. XVII § 3. Among the policies adopted by the Funds' trustees was the Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). Pet. Ex. G, ECF

3

No. 1-7. The Collection Policy expressly provides that disputes between the Funds and employers like the respondent must be resolved through arbitration. Id. § VI(1).

The CBA and the Collection Policy both provide that, should the Funds be required to arbitrate or litigate a dispute over unpaid employer contributions, the Funds would be entitled to collect, in addition to the owed contributions: (1) interest on the unpaid contributions at the prime rate plus two percent; (2) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages in the amount of 20 percent of the unpaid contributions; (3) audit costs; and (4) reasonable costs and attorneys' fees incurred by the Funds for all time spent making collection efforts. See Pet. Ex. B, art. XVII, § 6; Pet. Ex. G, §§ IV(11), V(4)-(6). The Collection Policy also provides that if a dispute proceeds to arbitration or litigation, then the employer will be responsible for attorneys' fees and "the entire cost of a payroll review and/or audit." Pet. Ex. G § IV(11).

Pursuant to the CBA and Collection Policy, the Funds conducted an audit of the respondent covering the period between January 1, 2022 and June 30, 2024. Pet. ¶ 22. This audit revealed that the respondent had failed to pay $522,212.85 in contributions to the Funds. Id.; see also Pet. Ex. H, ECF No. 1-8. The respondent failed to pay the amount identified by

4

the audit report, and the Funds initiated arbitration pursuant to the CBA and Collection Policy. Pet. ¶¶ 23-24; see also Pet. Ex. I, ECF No. 1-9.

On August 13, 2025, the arbitrator held a hearing. Pet. ¶ 25. On September 12, 2025, the arbitrator entered an award in the amount of $801,651.25 for the Funds. Specifically, the arbitrator found that the respondent had violated its contractual obligations and owed the Funds (1) the principal deficiency contained in the audit report in the amount of $522,212.85; (2) interest in the amount of $130,901.57; (3) liquidated damages in the amount of $135,274.33; (4) promotional fund contributions in the amount of $2,728.75; (5) audit costs in the amount of $5,533.75; (6) attorneys' fees in the amount of $3,000; and (7) arbitration costs in the amount of $2,000. Pet. ¶ 26; see also Pet. Ex. J, ECF No. 1-10. The arbitrator also ordered that prejudgment interest accrue on the award at an annual rate of 9.5 percent from September 12, 2025 through the date of the judgment, as set forth in the Collection Policy. Pet. ¶ 27; see also Pet. Ex. J. On September 17, 2025, the Funds served the respondent with a demand for payment and compliance with the award. Pet. ¶ 28; see also Pet. Ex. K, ECF No. 1-11.

On January 9, 2026, the Funds filed the Petition seeking to confirm the arbitration award. After the respondent's original

5

time to respond to the Petition had expired, the Court sua sponte extended the time to respond. ECF No. 11. Despite that extension, the respondent failed to respond. Therefore, the petition will be treated as unopposed. In addition to seeking confirmation of the final award, the Funds seek attorneys' fees and costs, prejudgment interest, and postjudgment interest. Pet. ¶¶ 32-41.

## II.

Section 301 of the LMRA grants federal courts jurisdiction over petitions brought to confirm labor arbitration awards. Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1988). The Supreme Court has explained that district courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987); see also Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016). Accordingly, an arbitration award is to be confirmed if there is even a "barely colorable justification" for the decision. U.S. Steel & Carnegie Pension Fund v. Dickinson, 753 F.2d 250, 252 (2d Cir. 1985).

Although the respondent has failed to respond to the Petition, the Court must do more than simply issue a default

6

judgment for the Funds. The Court of Appeals for the Second Circuit has explained that a default judgment is generally inappropriate in a proceeding to confirm or vacate an arbitration award because "[a] motion to confirm or vacate an [arbitration] award is generally accompanied by a record," and "the petition and accompanying record should [be] treated as akin to a motion for summary judgment based on the movant's submissions." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006).

The standard for granting summary judgment is well established. The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III.

In this case, the arbitrator's award was not the arbitrator's "own brand of industrial justice." See United Paperworkers Int'l Union, AFL-CIO, 484 U.S. at 36. The

7

arbitrator reviewed the "substantial and credible evidence" and determined that the respondent was "delinquent in Fringe Benefit monies due under its written agreement" and consequently, violated the CBA and is liable to the Funds in the amount of $801,651.25. Pet. Ex. J. at 3.

The record submitted with the Petition includes the CBA, the Contribution Policy, evidence of the violation, and an accounting of the unpaid contributions to the Funds. See Pet. Exs. B, G, H. The record supports the arbitrator's decision, and there is no genuine dispute of any material fact. The arbitrator's decision should therefore be confirmed.

### IV.

The Funds also seek to recover attorneys' fees and costs, prejudgment interest, and postjudgment interest.

### A.

The Funds request attorneys' fees in the amount of $497.70 and costs in the amount of $490. Pet. ¶¶ 39-40. "[N]either Section 301 of the LMRA nor the Federal Arbitration Act provides for attorneys' fees in actions to confirm an arbitration award." Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc., No. 12-cv-005, 2012 WL 3744802, at *4 (S.D.N.Y. Aug. 29, 2012); see also Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 47 (2d Cir. 1985). Courts may, however, exercise their "inherent equitable powers

8

to award attorneys' fees when opposing counsel acts in bad faith," and, in award-confirmation proceedings, courts have awarded fees "when a challenger refuses to abide by an arbitrator's decision without justification." Dejil Sys., 2012 WL 3744802, at *4.

Courts in this district "have routinely awarded [attorneys'] fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. All. Workroom Corp., No. 13-cv-5096, 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013). Moreover, under both the CBA and the Collection Policy, the Funds' attorneys' fees are recoverable. See Pet. Ex. B, art. XVII § 6(4); Pet. Ex. G, §§ IV(11), V(6).

The respondent has failed to comply with the CBA, both by not making the required payments to the Funds and by not participating in the arbitration. To date, the respondent has continued to ignore its obligations by refusing to abide by the terms of the final award and by failing to respond to the Petition. Thus, there is sufficient justification to award the Funds their attorneys' fees and costs incurred in connection with this action.

To support their request for attorneys' fees, the Funds submitted invoices that documented the specific tasks performed,

9

the hours worked, and the hourly billing rates for the attorneys who worked on this matter. See Pet. Ex. L, ECF No. 1-12. The requested attorneys' fees represent 2.1 hours of work performed on this matter by one partner, one associate, and one legal intern. The partner was billed at $430 per hour; the associate was billed at $325 per hour; and the intern was billed at $163 per hour. Id. The hours expended and the rates are completely reasonable.

Court costs for service and other fees are also routinely permitted, see N.Y.C. & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., No. 16-cv-1115, 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016) (collecting cases), and the costs sought by the Funds in this case are reasonable.

Accordingly, the Funds are entitled to $497.70 in attorneys' fees and $490 in costs.

**B.**

The Funds also request prejudgment interest at an annual rate of 9.5 percent from the date of the award. The Court of Appeals for the Second Circuit has observed that in the context of petitions to confirm arbitration awards, there is a "presumption in favor of pre-judgment interest." Waterside Ocean Navigation Co. v. Int'l Navigation Ltd., 737 F.2d 150, 154 (2d Cir. 1984). Accordingly, courts in this district "have exercised their discretion to award prejudgment interest when confirming

10

arbitration awards under collective bargaining agreements pursuant to [section] 301 of the LMRA." Service Emps. Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs., 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004). The "common practice among courts within this Circuit is to grant interest at a rate of 9%, the rate of prejudgment interest under New York State law." Id. (citing N.Y. C.P.L.R. §§ 5001-04). Parties may, however, contract around the statutory rate for prejudgment interest. See KLS Diversified Master Fund, L.P. v. McDevitt, 532 F. Supp. 3d 126, 138 (S.D.N.Y. 2021), aff'd, No. 21-1263, 2022 WL 2759055 (2d Cir. 2022).

In this case, the CBA provides for prejudgment interest on unpaid contributions "determined at the prime rate of Citibank plus 2%." Pet. Ex. B, art. XVII § 6(2). The arbitrator determined that the prejudgment interest rate in this case is 9.5 percent. The Funds are therefore entitled to prejudgment interest at a rate of 9.5 percent running from September 12, 2025, to the date on which the judgment is entered.

## C.

The Funds are also entitled to postjudgment interest on the full amount of the judgment at the rate provided under 28 U.S.C. § 1961(a). See Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." (citing 28

11

U.S.C. § 1961(a))). Postjudgment interest on the entire amount of the judgment will accrue from the date of the judgment at the rate provided by 28 U.S.C. § 1961(a).

**CONCLUSION**

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the arguments are moot or without merit. For the foregoing reasons, the petition to confirm the arbitration award is **granted**. The Clerk is directed to enter judgment as follows:

1) In the amount of $801,651.25, plus prejudgment interest thereon from September 12, 2025 to the date of the judgment, at an annual rate of 9.5%.

2) $497.70 in attorneys' fees and $490 in costs related to this action.

3) Postjudgment interest on the entire amount of the judgment, which shall accrue at the statutory rate. See 28 U.S.C. § 1961 (a).

When judgment is entered, the Clerk is respectfully requested to close this Case.

SO ORDERED.
Dated:     New York, New York
           April 24, 2026

John G. Koeltl
United States District Judge

12